IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| SASHA ANDREAS-MYERS, | * | |
| Petitioner, | * | Case No.: GJH-16-3410 |
| v. | * | |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, *et al.*, | * | |
| Respondents. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, Sasha Andreas-Myers files this Petition for Judicial Review and Injunctive Relief against the National Aeronautics and Space Administrative ("NASA") and R. Andrew Falcon, in his official capacity as Chief Counsel for the Goddard Space Flight Center (collectively, "Respondents" or "NASA"), regarding NASA's final decision denying Andreas-Myers' request to depose NASA employee Armando J. Radich. Now pending before the Court is Respondents' Motion for Summary Judgment, ECF No. 6. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Respondents' Motion for Summary Judgment is granted.

### I. BACKGROUND[1]

In or around 2006, Andreas-Myers ("Petitioner") filed a complaint with California's Department of Fair Employment and Housing against her employer Northrup Grumman

---

[1] Unless otherwise indicated, the facts are taken from the Administrative Record, which was filed in its entirety on the Court's electronic filing system (CM/ECF). ECF No. 5-1. For context, the Court has also included several facts from Petitioner's Complaint as they relate to the California litigation.

1

("Northrup"), alleging sex discrimination and sexual harassment in the workplace. ECF No. 1 ¶ 6. Petitioner and Northrup subsequently entered into a confidential settlement agreement and Petitioner agreed to resign from her position with Northrup. *Id.*

In 2013, NASA's Goddard Space Flight Center ("Goddard") sought to increase staffing at two California facilities where components for the James Webb Space Telescope ("JWST")[2] were being built. ECF No. 5-1 at 11.[3] Armando J. Radich, in his role as the Chief Safety and Mission Assurance Officer for the JWST project, submitted the request for additional mission assurance personnel. *Id.* at 10-11. When Goddard wants to increase staffing at a remote location, it has the option to obtain support services from contractors. *Id.* at 11. The process to obtain support services is outlined in the Audits, Assessments and Assurances Services ("A3") contract. *Id.*

Following the protocols dictated by the A3 contract, Radich submitted a request to add a new staff member at each of two facilities located in California, one in Redondo Beach, run by Northrup through a contract it had with the Jet Propulsion Lab ("JPL"), and another in Moorpark, California. *Id.* Radich identified the necessary skills and experience required for the position and SQA Services ("SQA"), a sub-contractor on the A3 contract in charge of staffing, sent him two resumes to review. *Id.*

Radich reviewed the two resumes and placed one individual at the Moorpark location, based on his or her qualifications. *Id.* He considered placing Petitioner at the Northrup facility in Redondo Beach but his decision was "put on hold when JPL informed [him] that it planned on approaching the staffing need differently at that location." *Id.* at 12. According to Radich, JPL

---

[2] The JWST is a "large infrared space telescope," due to be launched in October 2018, whose mission is to "complement and extend the discoveries of the Hubble Space Telescope." ECF No. 5-1 at 10.
[3] Pin cites to documents filed to the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

declined oversight by Goddard, or any another third party, and decided to use "its own employees and colleagues at [Northrup]." *Id.* JPL and Goddard are working jointly to build the JWST but neither field center has authority over the other; thus, Radich agreed with JPL's staffing decision. *Id.* at 11-12. Because there was "no longer any need to staff the Redondo Beach location with a contractor mission assurance representative, no other candidate was given [the] position." *Id.* at 12.

On or around August 8, 2013, SQA stated to Petitioner that someone at Northrup had told NASA that Plaintiff had left Northrup in a "negative manner." *Id.* at 26. Subsequently, on August 16, 2013, SQA notified Petitioner that the position had "dissolved" because Northrup would not allow her onto its facility. *Id.*

Shortly thereafter, Petitioner filed a lawsuit against both Northrup and SQA in Los Angeles Superior Court, alleging that Northrup made defamatory statements to Radich regarding the circumstances of her former employment with Northrup and that she was not allowed on Northrup's premises, which, together, led to her rejection from the mission assurance position at the JPL/Northrup facility. ECF No. 1 ¶ 11. The claims against each defendant took separate tracks, with Petitioner's claims against Northrup proceeding through arbitration while her claims against SQA continued through motions practice in court. *Id.* ¶ 12.

In March 2015, NASA received and granted a request from an attorney representing Northrup to have Radich submit a sworn declaration concerning his role in the decision not to hire Petitioner. ECF No. 6-1 at 5.[4] After receiving Radich's declaration, Petitioner decided to settle her claims against SQA, but she continued to prosecute her claims against Northrup. ECF No. 1 ¶ 14.

---

[4] It appears that although NASA received the request for a declaration from an attorney representing Northrup, it was allegedly introduced by SQA in support of their Motion for Summary Judgment and by Northrup in the arbitration proceedings. ECF No. 1 ¶¶ 13-14.

3

On March 15, 2016, at the request of Petitioner's attorney, the Baltimore County Circuit Court issued a subpoena ordering Radich to appear at a deposition. ECF No. 5-1 at 14. On March 21, 2016, an attorney from NASA's Office of the Chief Counsel objected to the subpoena, saying, in relevant part, that Petitioner's request failed to specify "the information sought and its relevance to the proceeding in connection with which it is requested." *Id.* at 19.

On April 5, 2016, Petitioner responded with a more detailed explanation of her need to depose Radich. *Id.* at 25. Specifically, she explained that they had recently deposed Ed Snider, an SQA employee, who had contacted Petitioner about the mission assurance position with NASA. *Id.* at 26. His testimony, and associated documentary evidence, demonstrated that someone at Northrup had told NASA that Petitioner had left Northrup in a "negative manner." *Id.* Snider further testified that he learned from Nancy Hendrick, a Honeywell employee also involved in staffing, that Petitioner was not allowed on Northrup's facilities. *Id.* Snider also testified that Hendrick learned that information from someone at NASA, who he believed was Radich. *Id.* Petitioner explained that Hendrick was already scheduled to be deposed, and, based on Snider's testimony, they expected her to state that Radich was the NASA employee who had heard the defamatory statements from Northrup. *Id.*

Petitioner stated that Radich's testimony would be "the last part of the circuit connecting Plaintiff's denial of employment and Northrup's defamatory statement" and would "reveal the identity of the person at Northrup Grumman that spoke about Plaintiff in such a negative manner." *Id.* at 27. Petitioner also addressed NASA's alternative proposal, suggested over a phone call, that Radich could potentially respond to additional questions in a declaration "in light of the travel required of him, and his important daily role in the construction of the [JSWT]." *Id.* Petitioner stated that she would be open to such an arrangement if Hendrick did not identify

4

Radich as her source at NASA, but otherwise, "his live testimony would be essential and necessary." *Id.*

On April 7, 2016, NASA issued a final decision regarding Petitioner's request to depose Radich. *Id.* at 5-6. Relying on their internal regulations regarding requests for information, the Chief Counsel decided that Radich could not be deposed because "[c]ompliance with the request would demand too many hours away from Mr. Radich's job as the Chief Safety and Mission Assurance Officer for the [JWST], the largest and most important project at [Goddard]," and would "further involve the Agency in litigation wholly unrelated to NASA's mission." *Id.* at 5.

The Chief Counsel also considered the fact that "Mr. Radich has already provided answers to the information sought by the deposition." *Id.* Specifically, NASA noted that in his declaration Radich stated that, "I was not told any negative information about [Petitioner] from anyone at [Northrup]. I was never told about the circumstances regarding the prior employment of [Petitioner] with [Northrup], or the reasons why her employment ended. I also was never told anything about whether [Petitioner] was eligible for future employment with [Northrup] or whether she could work on [Northrup's] premises." *Id.* at 5-6.

NASA indicated that if, after Hendrick's deposition, Petitioner had additional questions for Radich, it would be "willing to consider a request for additional answers by way of a declaration." *Id.* at 6.

On June 17, 2016, Petitioner sent NASA another letter, reiterating its request to depose Radich. *Id.* at 31-34. In her letter, Petitioner argued that it was "disingenuous, arbitrary and capricious" for NASA to state that it did not want to be involved in this litigation, in light of their prior cooperation with a previous request for a declaration from Radich. *Id.* at 32. She also argued that, having deposed Hendrick, the veracity of Radich's prior declaration was now in

5

dispute. *Id.* Specifically, she stated that Hendrick testified about a telephone conversation where Radich told Hendrick "words to the effect that (a) Mr. Radich had learned from his counterpart at Northrup....that [Petitioner's] prior employment ended in a negative manner or in a manner that was involuntary on the part of [Petitioner], (b) that [Petitioner] would not be allowed onto [Northrup's] facility and (c) most importantly, that because of these two pieces of information told to Mr. Radich by [Northrup], [Petitioner] was no longer a suitable candidate for the contemplated work." *Id.* at 33.

Petitioner argued that these opposing narratives presented a "quandary" that would be "awkward to explain away" and implied that Radich had been "less than truthful when it suit[ed] the short-term needs and interests of NASA's subcontractors." *Id.* at 34.

In response to NASA's concern that a deposition would take Radich away from his role overseeing the construction of the JWST, Petitioner stated that "if Mr. Radich and NASA can 'waste time' for the defendants in this action, they can do so for the plaintiffs. Otherwise, NASA is being arbitrary and capricious." *Id.* Petitioner offered to be flexible in terms of location and timing for the deposition but ultimately warned that if NASA did not permit Radich to be deposed, she would file an ancillary action in federal court, seeking review of NASA's decision under the APA. *Id.*

On June 29, 2016, NASA responded via email to Petitioner's renewed request to depose Radich. *Id.* at 7. In the email, NASA stated that while they had considered Petitioner's request, "the Chief Counsel again declines to permit Mr. Radich to testify for the reasons stated in NASA's previous letter of April 7, 2016." *Id.* NASA also reiterated that it would be "willing to consider permitting Mr. Radich to answer relevant questions related to Ms. Nancy Hendrick's testimony by way of declaration." *Id.*

6

On October 11, 2016, Petitioner filed the instant case, requesting that this Court reverse NASA's final decision regarding Petitioner's request to depose Radich and enter a mandatory injunction compelling his deposition. ECF No. 1.[5] Respondents filed a Motion for Summary Judgment on February 3, 2017. ECF No. 6. Petitioner responded on March 27, 2017, ECF No. 8, and Respondents filed a timely Reply, ECF No. 9.

## II. STANDARD OF REVIEW

"When the United States is not a party to [the underlying]…proceeding, the 'sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas' is the APA." *Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at *4 (E.D.N.C. Oct. 31, 2014) (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999)). Under the APA, the Court shall "hold unlawful and set aside agency action, findings and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In evaluating agency-decision making under the APA, the Court's only role is to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens of Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). The scope of review "under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Furthermore, administrative actions are presumed valid; thus, a "court will not second guess an agency decision or question whether the decision made was the best one." *C & W Fish Co. v. Fox*, 931 F.2d 1556, 1565 (D.C. Cir. 1991). The APA only

---

[5] While the initial subpoena also requested that NASA produce certain documents, ECF No. 1-6, Petitioner limited her request for judicial review to Radich's deposition.

requires the Court to decide whether the agency "articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council,* 462 U.S. 87, 105 (1983) (citations omitted).

Section 706 of the APA directs a court evaluating an agency action to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Therefore, "a court reviewing an administrative tribunal's decision on the record 'should have before it neither more nor less information than did the agency when it made its decision.'" *Washington Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union,* 818 F. Supp. 2d 888, 907 n. 20 (D. Md. 2011) (quoting *IMS, P.C. v. Alvarez,* 129 F.3d 618, 623 (D.C.Cir.1997) (internal citations and quotation marks omitted)). An "agency may not skew the record by excluding unfavorable information....or [omit] information simply because it did not rely on it for its final decision." *Otsuka Pharm. Co. v. Burwell,* No. GJH-15-852, 2015 WL 1579127, at *2 (D. Md. Apr. 8, 2015) (citations omitted). Furthermore, "an agency is entitled to a strong presumption of regularity that it properly designated the administrative record," and "[s]upplementation of the administrative record is the exception, not the rule." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F. Supp. 2d 1, 5 (D. D.C. 2006).

When a court is asked to review a final agency decision under the APA, the normal summary judgment standard does not apply due to the "limited role of a court in reviewing the administrative record." *See Roberts v. United States,* 883 F. Supp. 2d 56, 62 (D.D.C. Mar. 23, 2012). Instead, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Kaiser Found. Hosps. v. Sebelius,* 828 F. Supp. 2d 193, 198 (D.D.C. 2011), *aff'd,* 708 F.3d 226 (D.C. Cir. 2013) (superseded by statute on other grounds)

(citing *Richard v. INS,* 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)). Thus, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

### A. Designation of Record

As a preliminary matter, Petitioner alleges that NASA has failed to provide the Court with the complete administrative record. Specifically, she argues that NASA should have included in the record "documents reflecting the communications between Northrup and NASA" regarding Northrup's 2015 request for a declaration from Radich. ECF No. 8 at 7-8.[6] NASA disputes this, stating that the record before the Court is complete and includes "all materials NASA considered, directly or indirectly, in making its determination…" ECF No. 9 at 4.

A petitioner must overcome the "strong presumption" that the agency properly designated the administrative record. *Pac. Shores Subdivision, Cal. Water Dist.,* 448 F. Supp. 2d at 5. To do so, the petitioner must provide "clear evidence" that the record was improperly designated by identifying "reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id.* at 5-6 (citation omitted); *see also Zeneca Inc. v. Shalala,* No. CIV.A. WMN-99-307, 1999 WL 728104, at *3 (D. Md. Aug. 11, 1999) ("The court assumes the agency properly designated the Administrative Record absent *clear evidence* to the contrary.") (emphasis in the original) (quoting *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 740 (10th Cir. 1993)). Petitioner has failed to meet this burden.

---

[6] Petitioner refers to Northup's "March 2013 request" but as the events in question had not even occurred on that date, the Court believes this to be an error. ECF No. 8 at 7.

9

Although Petitioner alleges the existence of additional documents, she fails to assert "non-speculative grounds" for her belief that such documents were considered by NASA in their decision making process. Petitioner merely posits that such communications "[were] at least indirectly considered by NASA when denying Petitioner's request" and that NASA "intentionally provided an incomplete administrative record to withhold unfavorable evidence from these proceedings; i.e. the stark contrast in treatment provided to Northrup versus the Petitioner…" ECF No. 8 at 8-9. Yet, these allegations fail to demonstrate clear evidence that NASA would have, or should have, considered year-old communications with Northup when reviewing Petitioner's deposition request, rather than focusing on Radich's declaration, which, in its estimation, addressed the matters that would be the subject of Petitioner's requested deposition. *See Ohio Valley Envtl. Coal. v. Whitman*, No. CIV.A. 3:02-0059, 2003 WL 43377, at *5 (S.D.W. Va. Jan. 6, 2003) (ordering record to be supplemented when agency's statement in the record illustrated reliance on materials not included in the record).

Petitioner's additional argument that NASA's failure to include its communications with Northrup "implies that NASA…did not even consider the prior declaration in finalizing its decision" is refuted by the administrative record before the Court. ECF No. 8 at 9. In its April 7, 2016 final decision, NASA specifically relies on statements from Radich's declaration and Radich's complete declaration has been included in the administrative record. ECF No. 5-1 at 5-6, 10-13.

While the record in this case is not extensive, it provides sufficient detail for the Court to review what was a relatively simple decision by NASA. Moreover, NASA has included documents that could be seen as unfavorable to it, such as Petitioner's statement that Radich's live testimony was "essential and necessary," ECF No. 5-1 at 27, and Petitioner's repeated

10

implications that NASA employees had been "less than truthful when it suit[ed] the short-term needs and interests of NASA's subcontractors." ECF No. 5-1 at 33. In short, this is not a case where an agency appears to be skewing the record in their favor. As Petitioner has failed to meet their burden of providing "clear and convincing" evidence that the administrative is incomplete, the Court will not order supplementation.

### B. NASA's Decision Regarding Deposition Request

Petitioner next contends that NASA's decision to deny her request to depose Radich was arbitrary and capricious. Based on the administrative record, the Court finds that NASA appropriately considered relevant factors, as outlined in its internal regulations, and provided a rational basis for its decision. Therefore, the Court will grant summary judgment in NASA's favor.

Federal agencies, such as NASA, may promulgate internal regulations that govern how the agency should respond to routine requests, such as requests for subpoenas. 5 U.S.C. § 301. In general, these regulations are referred to as "housekeeping" regulations, with the sub-set that govern subpoenas referred to as "*Touhy* regulations," in reference to a related Supreme Court case, *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 272 n. 3 (4th Cir. 1999)

In the context of a legal proceeding not involving the United States, NASA's *Touhy* regulations require that a party requesting information from a NASA employee "furnish the Office of General Counsel [with] a written, detailed statement of the information sought and its relevance to the proceeding in connection with which it is requested." 14 C.F.R. § 1263.103; *see also* ECF No. 5-1 at 35.[7] The General Counsel, or his designee, must approve an employee's response to such a request and "all valid demands" must be honored. *Id* §§1263.104 and

---

[7] The General Counsel may waive this requirement if it is deemed unnecessary. *Id.*

11

1263.105; *see also* ECF No. 5-1 at 35. When deciding how to respond to a request, the General Counsel "may" consider the following:

> (a) Whether such disclosure or appearance is appropriate under the rules of procedure governing the legal proceeding in which the demand arose.
>
> (b) Whether disclosure is appropriate under the relevant substantive law concerning privilege.
>
> (c) Whether disclosure might improperly reveal trade secrets, or commercial or financial information that is confidential or privileged.
>
> (d) Whether disclosure might reveal classified information.
>
> (e) Whether disclosure would violate a specific applicable constitutional provision, federal statute or regulation, or executive order.
>
> (f) Whether appearance of the requested employee would seriously implicate an interest of the Agency such as conservation of employee time for conducting official business, avoidance of expending appropriated monies for non-federal purposes, or avoidance of involving the agency in controversial issues not related to its mission.

14 C.F.R. § 1263.105

In its final decision letter to Petitioner on April 7, 2016, NASA explicitly relies on several factors discussed in subsection (f) of its *Touhy* regulations to deny Petitioner's request for a deposition. Applying these guidelines, the Chief Counsel stated that Radich could not be deposed because "[c]ompliance with the request would demand too many hours away from Mr. Radich's job as the Chief Safety and Mission Assurance Officer for the [JWST], the largest and most important project at [Goddard]." ECF No. 5-1 at 5. Additionally, "permitting [Radich's] testimony would further involve the Agency in litigation wholly unrelated to NASA's mission." *Id.*

The Chief Counsel also considered the fact that Radich had already provided a declaration that was responsive to Petitioner's request. NASA noted that Petitioner had


speculated that Radich's testimony "would also reveal the identity of the person at Northrup Grumman that spoke about [Petitioner] in a negative manner," ECF No. 5-1 at 5, but Radich had already stated that, "I was not told any negative information about [Petitioner] from anyone at [Northrup]. I was never told about the circumstances regarding the prior employment of [Petitioner] with [Northrup], or the reasons why her employment ended. I also was never told anything about whether [Petitioner] was eligible for future employment with [Northrup] or whether she could work on [Northrup's] premises." *Id.* at 5-6. NASA thus reasonably weighed Petitioner's need to conduct a deposition, in light of her access to a prior, responsive, declaration, against the impact that complying with Petitioner's request would have on the conservation of employee time. Moreover, NASA acknowledged Petitioner's belief that she was about to acquire additional information after Hendrick's deposition that could create a need for further investigation. In response, NASA stated that if, after Hendrick's deposition, Petitioner had additional questions for Radich, it would be "willing to consider a request for additional answers by way of a declaration." *Id.* at 6.

In its June 29, 2016 email responding to Petitioner's renewed request to depose Radich, NASA again relied on the rationale it had articulated in its April 7, 2016 letter. *Id.* at 7. In response to Petitioner's renewed argument that Radich's declaration was further called into question by Hendrick's testimony, NASA again reiterated that it would be "willing to consider permitting Mr. Radich to answer relevant questions related to Ms. Nancy Hendrick's testimony by way of declaration." *Id.*

"When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT Corp.*, 190 F.3d at 278. Courts have upheld an agency's decision to not

13

comply with a subpoena when the decision was reasonable and in accordance with their *Touhy* regulations. *See Sauer Inc.*, 2014 WL 5580954, at *4; *see also Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008).

Here, NASA's decision to deny Petitioner's request to depose Radich is reasonable and reflects a clear application of the factors NASA may consider pursuant to its *Touhy* regulations, such as conservation of employee time and limiting the agency's involvement in litigation unrelated to NASA's mission. And, contrary to Petitioner's argument, the fact that NASA previously provided a declaration to Northrup does not make a later decision to deny a request for a deposition arbitrary and capricious. An agency is free to consider the additional burden that a second request would entail after already having responded to a first request. In *Sauer*, the court upheld the Army Corps' decision to refuse to comply with a second subpoena after the Army Corps stated that they had "already expended significant time and effort" on the first document production and "believed that information to be sufficient to comply with Defendant's request." *Sauer Inc.*, 2014 WL 5580954, at *6. Although Petitioner distinguishes *Sauer* on the basis that it involved the same party making the additional request, that distinction is inconsequential where, here, NASA is offering Petitioner the same discovery it provided Northrup – a declaration of Radich. It is the additional burden of a deposition to which they object. Thus, this case is more akin to *Sauer* than *Singleton v. Babbit*, 588 F.3d 1078 (D.C. Cir. 2009), on which Petitioner relies. *See Singleton v. Babbit*, 588 F.3d 1078, 1082 (D.C. Cir. 2009) (finding agency was arbitrary and capricious where it took different position on the same issue).

Petitioner also argues that NASA's decision was arbitrary and capricious because the agency failed to consider Hendrick's April deposition testimony, which allegedly contradicts Radich's declaration. First, as NASA correctly argues, there is no evidence to suggest that the

transcript of Hendrick's testimony, attached to the instant petition, was provided to NASA before it made its determination. Instead, NASA received a summary of Hendrick's testimony in Petitioner's reconsideration letter, the substance of which Petitioner had foreshadowed in her first letter. Second, rather than disregarding this "relevant factor," NASA specifically indicated that it would be "willing to consider permitting Mr. Radich to answer relevant questions related to Ms. Nancy Hendrick's testimony by way of declaration." ECF No. 5-1 at 7.

While Petitioner's preference for a deposition is understandable, the scope of review "under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). This Court "will not second guess an agency decision or question whether the decision made was the best one." *C & W Fish Co. v. Fox*, 931 F.2d 1556, 1565 (D.C. Cir. 1991). Thus, the Court finds that NASA's decision to deny Petitioner's deposition request appropriately considered relevant factors, as outlined in its internal regulations, and provided a rational basis for its decision.

## IV.  CONCLUSION

For the foregoing reasons, Respondents' Motion for Summary Judgment, ECF No. 6, shall be granted. A separate Order follows.

Dated: April 28, 2017

GEORGE J. HAZEL
United States District Judge